Good morning, Your Honor. My name is Richard Kellner, and I represent the appellant. I'd like to reserve four minutes for rebuttal. I'm hoping to be very brief and get right to the point on what is the issue here. The defendant is entitled to recover as a condition for dismissal under Rule 41A2, paternity fees for costs which were not useful for the continuing litigation between the parties. Now, in this particular case, the need for that type of determination was extremely important because there were two other actions that were pending at the time of the request for dismissal without prejudice. And they were class actions, one in New Jersey, one that was in California. And ultimately what happened was both of these cases were ultimately disposed of, and one, in fact, by a motion to dismiss. And the record really reveals here that the vast majority of the time that was awarded by Judge Fischer ultimately involved motions to dismiss, involved discovery, involved experts which, from our vantage point, if there was a full analysis, would have been something which would have been not assessed as a potential for fees. Can I just, to clarify, are you arguing about the writ of mandate here? Because we're looking then at whether there was a clear error, whether the district court made a clear error of law, or are you arguing that about the conditional order of voluntary dismissal? Because I have some concerns about jurisdiction before we ever get to the CAC test. Okay, I think the answer is both. And the fundamental problem that we have here, and this is right on the surface, is that Judge Fischer gave plaintiffs a Hobson's choice, essentially. He told plaintiffs that you can have your dismissal without prejudice, and I'll determine later what the amount will be. It will be in this 100 to 110 range, but no determination was made. But then what was actually awarded was the 100,000, the low end of the range. So I was having trouble seeing how this was distinguishable from union oil, which seemed to be directly on point. And your client specifically said, no, I don't want to withdraw my motion, had the opportunity to do so. So I was having trouble seeing how under union oil we even have jurisdiction over that part of your claim. And the way that we have jurisdiction is multiple. First of all, the fact that there was conditions imposed which were improper takes us out of that realm. So one of the conditions was that the attorneys would have to pay for this award, which under this Court's decision in Hechtethorn is not proper. 41A does not allow for attorneys to be sanctioned. That's what this becomes is a sanction. I thought that it was joint in several, because Hechtethorn doesn't distinguish union oil. It's right there. It was joint in several, and in Hechtethorn it was only on the attorneys, and therefore it's a sanction. So isn't union oil still controlling on that issue? No, Your Honor. I disagree because the reason is that what the Court said in Hechtethorn is that there's nothing in 41A which gives the ability to sanction attorneys to put an award against attorneys. And what happens here, joint or several, individual, it still becomes a sanction. Congress did not give an independent ground, an independent basis, for the Court to assess an award against the attorneys. It's only against the party. There's nothing in the statute, and there's nothing that gives that award. And that's why the subsequent decision of Hechtethorn really, in my mind, is controlling in that regard. But wasn't – am I misremembering union oil? I thought there it was jointly and severally imposed on both the party and the party's attorneys. Well, two things. One, it was an or. It wasn't jointly or severally. It said or. But more importantly, that issue was not raised in union oil, but it was raised in Hechtethorn, which is a subsequent decision. I'm sorry. Yes, subsequent decision. Union oil is in 87. Hechtethorn is in 93. So in our circuit, I guess the one that's earlier decided stands because we don't have authority as a panel to overrule a prior decision, right? No, but I think the reason is that first of all, there was an issue that was not brought up in union oil that was brought up in Hechtethorn. And in Hechtethorn, the issue was whether or not 41A2 gives the power to impose an award against attorneys. And they said no because it's a sanction, and you can't do a sanction. And that is a fundamental problem. Well, do you want the client to pay the money? Do I want the – I don't want the client to pay any money. But who should pay it, then, the client? Yes, Your Honor. And did the client file this lawsuit? Yes, the client did file the lawsuit. Filed all three lawsuits? No, did not file the lawsuits. But here is the essence. What Your Honor is saying is that there's some sort of – I'm not saying anything. I'm just asking you questions. Oh, of course, Your Honor. Yeah. The client did not file the lawsuit. The client did file the lawsuit. Physically, the attorneys did, but they did it as agents for the client. So the determination of whether or not the action should be withdrawn is really ultimately the client's decision without prejudice. And the problem is, again, if we look at the statute. Well, if it's without prejudice, then you can file it again. Right. Somewhere else. If the client wanted to. Well, the client could decide not to file it at all. In this situation, the client never. How many members of the class are there? The putative class probably had millions. Millions. Did you consult with all those members of the putative class? I did not, Your Honor. No. No. But so it was your firm that filed the lawsuit. And you wanted to get out of it. You wanted to get out of that place where you were. And so the judge said, okay, you want to get out of it without prejudice? You put these people on the other side at a certain expense. What did they ask for, $400,000 or something like that? They asked for originally $150,000, and they dropped it to $130,000. And ultimately. . . Who asked for it? Brother. What? The defendant. Brother asked for that amount of money. But the judge gave only $100,000. She gave $100,000. She gave $100,000. Correct. Ultimately. And the real problem here, again, is that if we look at Koch, you can't put the plaintiffs in a position of saying it's going to be arranged without analysis. There has to be analysis. We have to have the right to have the judge actually go through and make an analysis, which was not done here. And the only way that we preserve our rights, the only way that we can get review of this, is if we do exactly what we did. Why did you want to dismiss it without prejudice? Why did we want to? Yeah. One option was that that plaintiff could ultimately become a party in another class action as a class rep, potentially. But what happened here, and that's really the point, there comes a point in time from a principle standpoint, which is the situation here, where there's a wrong decision made by the district court, and we want to bring this up on appeal. And the only way to bring it up on appeal and the only way to preserve our rights, because if Judge Fischer said it's between $100,000 and $1 million. But there were pages and pages of declarations and descriptions explaining how each line item was or was not useful in future litigation. Why is that not enough to bring the court's decision out of the clear error range? The problem is that the court didn't make any determination. The court did not make an analysis. The court did not say anything in particular, especially at the $100,000 to the $110,000 juncture. At that point, it's more of a tentative, a guesstimate. And the court says, I'm going to make a decision in the future, but you have to decide now whether or not you want to stay in. Well, there's a very narrow range. I mean, there are very few things in the law that are certain, I suppose, except death and taxes, as they say. But the real point from our perspective is that if she were to make the analysis, which we hoped she would make, that she would come to realize that this was, in fact, the vast majority of the time, such as motions to dismiss, such as legal research, items that were usable in other litigation, especially when you have motions to dismiss that actually took place in other litigation. And the point is that if there was an analysis made, if there was a full rendering of decisions, that would be fine. But what we have here is something which is much more reminiscent of the Cox situation. She had a chance to dismiss it without prejudice before the response of pleading was filed. Right, and we made a decision later to make that motion to dismiss, and all we asked from the court was to make the determination, tell us exactly what the number is, and make a determination. She did not make any determination. All she did was, in essence, make a punitive number. I mean, the $100,000 number itself. So, but you consented to the $100,000 to $110,000 by not withdrawing the motion. That's how our cases work. And then there's an exception, I guess, that Union Oil indicates if the conditions impose actual legal prejudice, but says that's not cost and fees. So it would have to be something that limits your ability to do a follow-up action. So I guess I'm still not understanding why Union Oil doesn't just deprive us of jurisdiction over this. Well, the first is that when we made our objection, we said we're objecting because Your Honor's not making that determination. So this was not a situation like in Union Oil. So we not only said that we are not withdrawing our request, but we said we're objecting that Your Honor's not telling us what the award number is. But doesn't Union Oil seem to indicate that if you don't withdraw your motion, you're sort of stuck unless there's a legal prejudice in the order that's ultimately issued by the district court? And we say that there was legal prejudice, number one, that she did not make the calculation that she was supposed to make. But how does that hurt your ability to carry on further cases? That seems to be how Union Oil defines legal prejudice. No, I think legal prejudice goes beyond that. I mean, in fact, here, the imposing, frankly, of the obligation of attorneys to pay, we believe is not consonant with 41A2, and that's imposing a condition that would take it out of the Union Oil situation. The fact that, again, this was not calculated. I think there's a big problem here, especially when there's no analysis done. And all that's happening here is the judge is saying, this is something I will do, I'll give you a final number in the future. And on the 41A2, you just can't go that route. You have to be able to tell the parties what is the number. It was clear the max was 110,000, was it not? It was clear there would be 110,000. Wasn't that enough? What? Why wasn't that enough? Because the problem is that we have a right, first of all, the point is we believe that the number should be much lower. We believe that if she did make a full analysis, her final award would probably be much lower if she abided by what the law and the rules are. Well, she certainly reduced the amount they asked for. And she certainly had pages and pages of declarations and things to assist her in doing that. But it's hard for me to understand why you were mystified when a great deal more had been claimed. She reduced it, obviously considering the other cases that were pending. At any rate, I think I've stated my answer. I understand. You had two cases filed, didn't you? There were two. We had one case filed. You had one case filed. And there was another case that was pending with another party. Weren't there two down here? There were two down here. So you had two down here and you had one? No, I didn't have two down here. There were two down here and there was one back. We're in New Jersey. We were co-counsel in New Jersey. We had one case here and there were other attorneys who were prosecuting the same type of case here. When we went out, virtually everything that the brother used in our case could be used in the pending case. There was no analysis done of that. And the problem is fundamentally our rights have been violated because, again, because Judge Fischer didn't make the analysis. And on its face, when you have over 70- She had all those records and everything else over there. All she- Save you a figure, you know. Save you $10,000. Your Honor, it was not saving us $10,000. It should have been dramatically lower, but she didn't make the analysis. Look at this record. All she says is this is the number. And she says I made a- She didn't tell anything. And I think the Court, even in Unioil and in Koch, requires more. You have to be able to tell when you're making a war because Your Honors are deprived of any ability to know what was cut, what was not cut, why, which was done. There's nothing out there. And this record is barren of that. And when we're talking about an ability to make a determination from my standpoint, my client's standpoint, and the Court, there's nothing in this record that Judge Fischer did which lets us know what's happening. That's how we're prejudiced. Your time is up. Okay. Yeah. Good morning, Your Honors. My name is Karen Walter. Well, let's just pause for a minute. Okay. All right. All right. How do you answer his point? Well, it was insufficient analysis. Suppose that, for instance, the district court had included fees used in a CANDEL litigation. That would be clear error, would it not? So wouldn't we need to at least remand the case to the district court for clarification? What would your response be? The findings that the court made, she made a specific finding that her award was based on the submissions of the defendant. And as you've noted, those were quite extensive. Our initial request, we took the time entries from over a year's worth of billing records. We had declarations describing what that was, carving that up, putting that into 11 different categories, excluding some of the time that we recognized would be useful in continuing litigation between the parties. We came up with a number of about 151,000. We then, in our own demand papers, reduced that by 10 percent, saying that that would sort of be a cushion for recognizing that this allocation of time was sort of inherently uncertain. So our award for just fees, not costs, at that point came down to 136,000. When the court further asked us to consider, okay, well, what if we had to pull out work that was also useful in CANDEL? The number came out, again, down to, I'm sorry. At that point, I think we were down to, like, it was 109,000, I think, at that point. And then the court ultimately looked at that. She did make findings in one of her orders that she was going to reduce that time further as a result of inadequate documentation and arguably excessive time spent on some tasks. So that was how she came down to the 100,000. So if you look at all of the supporting documentation, you can track how the court would arrive at that number. It was not a number that was arrived at by throwing a dart or without doing any analysis. It was a number that was supported by the evidence and declarations that were submitted by the defendants. Go ahead. You argued before the district court that CANDEL should not be considered litigation between the parties and so it wasn't covered by the test. Is it clear? In other words, is subtracting for CANDEL or not subtracting for CANDEL, would that be clear error? Do we have any cases that would indicate what constitutes litigation between the parties or are you still taking the position that CANDEL was not litigation between the parties for purposes of the CAC test? Yes. We are still taking the position that CANDEL was not litigation between these parties for purposes of the CAC test. However, you know, if the court did address that, then that would have reduced the number even further. And so in that, if the court considered it continuing litigation between the parties, then the plaintiffs in this matter would not have been prejudiced by her decision to do that as that would have reduced the number even further. Just to quickly address the point that Your Honor brought up about a jurisdiction, we would agree that UNOIL is controlling. The points that my opponent made trying to distinguish this case from UNOIL, that it also involved an assessment against the attorneys, is actually not a point of distinction as Your Honor pointed out. That was also true in UNOIL. And the fact that there was a range that was stated rather than a specific number is also not a sufficient point of distinction given, as Your Honor commented earlier, that that was not something that was ultimately prejudicial since they knew it was going to be at least $100,000 and with that knowledge decided they were not going to withdraw their motion and then ultimately the amount that was awarded was the $100,000. Yeah. Okay. Thank you. Thank you, Your Honor. Sure. In Koch, the court did go into very much detail saying what needs to be stated in a determination that's been made in a fee award, an award determination. And in that case, it's very similar to this situation where essentially the court deferred and then didn't say what the basis of its determination was. And the Ninth Circuit said that's not good enough. It has to be sent back because that determination was made. Is that a class action? Is that a class action? You're telling us about. Okay. It's either a class action or a master action. That involved investors and that was the situation. It says investors. I do not know whether or not that particular case was a class action, Your Honor. But the one thing that's very clear is that when we're put in a position that the court says prospectively I will make a determination, under 4182 she can't deprive us of our right and opportunity to know what the actual amount is before we make a decision. And just as it could have, that's a substantial. Well, but you know what it was going to be. She told you it was $100,000 to $110,000, right? Somewhere in there. Well, she actually did. She said that. She said that. She said that. But, frankly, if she were to make a full review it could be less, it could be more. Yeah, but she told you that. So, you know, if you're awake you'd know where it was going to fall.  So why at that time did you say, well, we withdraw our motion to dismiss? Because this was, again, everything along the lines here, this was frankly just a bullying situation where there was no determination made. We wanted the determination made. We wanted to preserve our rights. Why did she want you? She told you it was going to be between $100,000 and $110,000. And she had all these records out there. And you'd have to be asleep not to know it was going to go somewhere. Between $100,000 and $110,000. And you didn't ask to withdraw your motion to dismiss. It's going to go that way. So you had a chance then to pull back, but you didn't do it. Because we wanted to be sure. We wanted to preserve the rights that she does this the right way, and she didn't do it the right way. Did you do it the right way? I believe so, Your Honor. We did it the right way because we wanted to. Because you wanted to get out of that courtroom. That's what you wanted. You wanted to get out of that courtroom. Isn't that right? We could have dismissed with prejudice as well. Yeah, well, but if you'd have done that, that might have had an effect on some other case you'd filed. I don't think it could possibly. Well, you know, people could argue about that. So then why didn't you go in there and dismiss it with prejudice? Because, again, the idea is there comes a point in time when somebody is violating the rules and following the principles. We have a right to say no and fight this, and that's just what we're doing. Okay, fine. We've heard you, and you're over your time. Okay, thank you very much, Your Honor. And I hope you got enough money for tuition to Occidental. Okay. You have a right to check out now. All right. Okay. Oh, boy. I wish I had known you were going to be here. I wish I could have asked. Is that for you? No, sir. No, sir. She wants something. Whatever you want. She has employment. No, no. She'll pay you back. She'll pay me back. But then we don't know how long that's going to be. I'm not hearing correctly because I'm taking a break. You're taking a break. But then that's going to be another half hour. It's already 10 to 12 o'clock. Yeah.    Next time you come, let us know in advance. Did we know in advance? What? Just come up here. So I had actually notified the court by mail, as I have done last semester and the semester before, because I had requested the opportunity, if judges were available and their clerks were available, to meet with us afterwards, which has been granted before. But unfortunately, I didn't get any response back from the court this time. Okay. I mean, most of us are very happy to meet with students 80 days in advance. We have to go to the conference. It's going to be – I know. We've sat before with conference, and then sometimes we've chatted before conference, and I absolutely understand that. And I had hoped that we'd have the opportunity, but I recognize that things are also very busy, and so I just didn't want to be too obnoxious. Well, sometimes we have other guests coming. I have an Egyptian ambassador. I have people coming from Ohio this afternoon. Wow. And sometimes we'd be very happy to meet with you. I'm a former law professor. I really enjoy meeting with students. And I know the judge Ferguson is old. Oh, no, absolutely. Oh, no. Judge Nelson is a former dean of USC Law School. My son went to Occidental. Yay. But then he became a Trojan, so. There's a little bit of that. Really, I love to talk to them, and I haven't been able to convince any of my granddaughters.
judges: Pregerson, Nelson D. W., Ikuta